# COURT OF APPEALS OF VIRGINIA

## Record No. 0275-25-4

HITT CONTRACTING, INC.

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY

Present: Judges Friedman, Chaney and Duffan

Argued at Fredericksburg, Virginia

Opinion Issued August 4, 2026[*]

## FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
David A. Oblon, Judge

Charlie C.H. Lee (Kristen A. Bennett; Thomas L. Wilson; Rachel E. Bauer; Moore & Lee, P.C., on briefs), for appellant.

John S. Buford (John B. Mumford, Jr.; Robert L. Ferguson, Jr.; Timothy J. Dygert, Jr.; Hancock, Daniel & Johnson, P.C., on brief), for appellee.

## MEMORANDUM OPINION BY
## <u>JUDGE VERNIDA R. CHANEY</u>

HITT Contracting, Inc. ("HITT") appeals the circuit court's final judgment entered in favor of St. Paul Fire and Marine Insurance Company ("St. Paul") in a dispute over insurance coverage stemming from the settlement of underlying construction litigation related to the Glenstone Museum Project in Potomac, Maryland. The dispositive issue is whether HITT provided timely notice under St. Paul's loss notification provision after Glenstone Foundation, Inc. ("Glenstone") filed a counterclaim seeking "no less than $35.9 million" and alleging substantial physical defects in the construction project. On this record, the circuit court could reasonably conclude that HITT

---

[*] This opinion is not designated for publication. *See* Code § 17.1-413(A).

did not provide timely notice of a potential coverage claim as required by St. Paul's notification policy.  Therefore, this Court finds no error and affirms the circuit court's judgment.

BACKGROUND

In December 2014, HITT and Glenstone entered into a construction management agreement for the Glenstone II museum project in Potomac, Maryland.  HITT served as construction manager, not general contractor, and did not perform any work itself; its subcontractors performed the work.  The project included roofs on various museum buildings, a specialized glass curtainwall system, and large gallery and exterior doors and hardware.  The museum opened to the public on October 4, 2018.  After disputes arose concerning payment and the quality of the work, HITT sued Glenstone in federal district court in Maryland on August 22, 2018, seeking more than $18 million in unpaid contract balance and extra work.  On October 26, 2018, Glenstone filed a counterclaim seeking "no less than $35.9 million" in damages.[1]

The project was insured through a Contractor Controlled Insurance Program.  R. 1055, 2797-98, 3647, 3682.  The program consisted of a $2 million primary policy issued by Hartford Fire Insurance Company, a $25 million first-layer excess policy issued by XL Insurance America, Inc., and a $25 million second-layer excess policy issued by St. Paul.  R. 1055-56, 3114-3230, 3231-74, 3333-63.  The combined limits were $52 million, and St. Paul's policy attached only after $27 million in underlying coverage had been reached.  R. 1056.

---

[1] The parties describe the counterclaim differently.  According to St. Paul, the counterclaim included claims for defective and incomplete work.  The counterclaim also requested liquidated damages for delay and HITT's failure to produce a building information model.  According to HITT, the counterclaim asserted construction defects without expressly identifying categories of damages.

The XL and St. Paul policies were "follow-form" policies, meaning that they followed the terms of the underlying insurance except where the excess policy provided otherwise.[2] R. 1056, 2245-46, 2406, 3252-53. Consistent with that follow-form structure, the St. Paul policy incorporated the underlying insurance "terms, conditions, definitions, limitations and exclusions" unless inconsistent with St. Paul's policy. R. 3253. The St. Paul policy also required HITT to notify St. Paul or its agent if "an occurrence, event, accident, offense, incident, act, error, or omission happens or is committed that will likely result in damages that exceed the Loss notification amount shown in the Coverage Summary." R. 3256. Since no separate loss notification amount appeared in the Coverage Summary, the policy's default provision set the threshold at 50% of the combined underlying policy limits, or $13.5 million. R. 3244, 3256.

HITT did not notify St. Paul of a potential coverage claim when Glenstone filed its October 26, 2018 counterclaim. R. 1479. The parties instead continued litigating and participated in mediation on March 19, 2019. R. 2710-11, 3534. On March 26, 2019, after that mediation failed, HITT notified Lockton Companies, LLC ("Lockton") of Glenstone's counterclaim. R. 2710, 2328-29. Lockton was the insurance broker that put together the project's Contractor Controlled Insurance Program and was identified in the St. Paul policy as its "authorized representative." R. 3203. HITT later characterized its communication notifying Lockton of Glenstone's counterclaim as informational rather than a claim for coverage. R. 2122-23. From January through March 2020, Glenstone provided numerous expert reports to HITT. R. 2506-09, 2521-27. On March 9, 2020, after receiving the last of Glenstone's expert reports, HITT provided St. Paul with direct notice of the counterclaim and the expert reports'

---

[2] "The phrase 'follow form' refers to the practice, common in excess policies, of having the second-layer coverage follow substantively the primary layer provided by the main insurer." *Bartolomucci v. Fed. Ins. Co.*, 289 Va. 361, 368 (2015) (quoting *Insituform Techs., Inc. v. Am. Home Assur. Co.*, 566 F.3d 274, 278 (1st Cir. 2009)).

- 3 -

findings.  R. 2532-33, 3535-36.  The expert reports identified claimed property damage to the project and sought remedial and replacement costs.  R. 2506-09, 2521-27.

In June 2023, HITT and Glenstone eventually settled the Glenstone litigation for $51 million, consisting of a $33 million cash payment and HITT's waiver of its $18 million contract-balance and extra-work claims.  The settlement agreement recited that Glenstone's counterclaim included claims for "Glass" damage, "Building Envelope" damage, and "Doors and Hardware" damage.  Hartford paid its full $2 million policy limits, XL paid $10 million, and HITT paid the remaining $21 million.[3]  HITT then sought $24 million from St. Paul, representing the difference between the $51 million settlement and St. Paul's $27 million attachment point.

While the Glenstone litigation was pending, Hartford and XL filed this declaratory judgment action in the Circuit Court of Fairfax County on August 21, 2020.  St. Paul later joined the action and disputed exhaustion, coverage, and notice.  The court denied St. Paul's motion for summary judgment on exhaustion and granted HITT's responsive motion on that issue.  The remaining issues for trial were whether the St. Paul policy afforded coverage and whether HITT gave timely notice under the policy.

In a December 12, 2024 letter opinion, the circuit court identified as its first question whether "St. Paul [had] notice of a likely insurance claim."  R. 1480.  The court found that HITT "did not provide St. Paul with reasonable notice," and stated, "[t]his ruling, alone, mandates judgment in favor of St. Paul."  R. 1480.  The court entered final judgment for St. Paul on January 13, 2025.  R. 1490-97.

---

[3] HITT's $21 million contribution included the $15 million that HITT contends exhausted the remainder of the XL layer and thereby triggered St. Paul's attachment point.  R. 388, 396, 1056, 2827.

- 4 -

ANALYSIS

HITT challenges the circuit court's finding that its notice to St. Paul was untimely under a policy that did not prescribe a date certain for notice.[4]  "Under settled principles of insurance law, '[t]he interpretation of an insurance policy presents a question of law that we review de novo on appeal.'"  *Erie Ins. Exch. v. Jones*, 301 Va. 61, 65-66 (2022) (quoting *Va. Farm Bureau Mut. Ins. Co. v. Williams*, 278 Va. 75, 80 (2009)).  We therefore review de novo the meaning of St. Paul's notice provision.  However, once the policy's notice trigger is identified, the timeliness of notice is a question of fact.  *See Dabney v. Augusta Mut. Ins. Co.*, 282 Va. 78, 88 (2011) ("Generally, whether notice has been given to the insurer 'as soon as practicable' is an issue to be resolved by a fact finder." (quoting *State Farm Fire & Cas. Co. v. Scott*, 236 Va. 116, 120

---

[4] HITT also assigns error to the circuit court's rulings concerning witness credibility, coverage under St. Paul's follow-form excess policy, the effect of the follow-form structure after exhaustion of the underlying layers, and exclusion of certain expert reports.  "[W]e strive to decide cases on the 'best and narrowest grounds.'"  *Wallace v. MJM Golf, LLC*, 86 Va. App. 663, 674 (2026) (quoting *Alexandria Redevelopment & Hous. Auth. v. Walker*, 290 Va. 150, 156 (2015)).  The "best" ground is that agreed to by the largest number of jurists, and the "narrowest" ground is that which affects the fewest cases.  *Id.* (citing *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020)).  Applying those principles, notice provides the best and narrowest ground for resolving this appeal.
Even assuming without deciding that HITT could otherwise establish covered loss sufficient to implicate St. Paul's layer, HITT still had to satisfy the policy's notice condition before it could recover under that policy.  Insurance notice provisions are conditions of coverage requiring substantial compliance by the insured.  *See State Farm Mut. Auto. Ins. Co. v. Porter*, 221 Va. 592, 597, 599 (1980) ("We have said that performance of provisions requiring notice of an accident and the furnishing of information as to claims made or actions brought usually is considered a condition precedent to recovery under the policy.").  Resolving this appeal on notice thus permits us to affirm without deciding HITT's remaining assignments of error.
Determining this case on the "best and narrowest" grounds also forecloses HITT's contention at oral argument that the circuit court had to fully resolve products-completed operations coverage before deciding notice.  By assuming without deciding that HITT could establish covered loss sufficient to implicate St. Paul's layer, the notice provision still asks an earlier question: when "an occurrence, event, accident, offense. . . or omission" would "likely result in damages" above the loss-notification amount.  That language required a predictive judgment based on information then available; it did not allow HITT to wait until it could prove the precise coverage theory, damage category, or allocation of the eventual settlement.  Therefore, notice is dispositive for this appeal.

(1988))). Following a bench trial, we do not disturb a circuit court's factual finding "unless it is plainly wrong or there is no evidence to support it." *MCR Fed., LLC v. JB&A, Inc.*, 294 Va. 446, 457 (2017) (quoting *Gov't Emps. Ins. Co. v. United Servs. Auto. Ass'n*, 281 Va. 647, 655 (2011)). Accordingly, to the extent the circuit court's notice ruling rested on factual findings as to the objective information conveyed by Glenstone's counterclaim and the time at which HITT's notice obligation arose, those findings are reviewed with deference on appeal.[5]

HITT emphasizes that the St. Paul policy did not require notice "promptly," "immediately," or "as soon as practicable." It also argues that the circuit court erred by using the term "immediate" in its letter opinion. However, the XL policy used the phrase "as soon as practicable," requiring notice if a claim or suit "may involve this policy." R. 3211. Meanwhile, the St. Paul policy used different language, requiring notice if "an occurrence, event, accident, offense, incident, act, error, or omission happens or is committed that will likely result in damages that exceed the Loss notification amount shown in the Coverage Summary." R. 3256. Since no separate loss notification amount appeared in the Coverage Summary, the policy's default provision fixed that amount at 50% of the combined underlying limits, or $13.5 million. R. 3244, 3256.

The difference in phrasing, however, does not alter the central point. The St. Paul policy still imposed a notice obligation once an identified occurrence, event, act, error, or omission was likely to result in damages exceeding the specified amount. Since the St. Paul policy identified

---

[5] We review the policy language de novo, but once the notice provision is construed, the timeliness of notice turns on what the record objectively showed and when it should reasonably have appeared that the policy may be implicated. That determination is factual and receives appellate deference. Since HITT's March 26, 2019 notice to Lockton—an undisputed date— independently establishes when HITT recognized a likely claim, the circuit court's credibility findings regarding Jeremy Bardin, HITT's co-President and corporate representative, and Joseph Guarino, HITT's trial lawyer in the Glenstone action, are unnecessary for our resolution of this issue.

the trigger for notice but did not prescribe a fixed date certain by which notice had to be given, the court did not read the policy as requiring immediate notice. Rather, the court recognized that the St. Paul policy differs from the language requiring notice "as soon as practicable," but it concluded that "[w]hen an insurance notice provision in a contract lacks a set deadline, the law implies reasonable notice after the likelihood of a claim arises." R. 1481-82.

The circuit court's approach is consistent with Virginia law. *See Dabney*, 282 Va. at 87-89 (treating compliance with a notice condition as a question of timeliness and reasonableness); *Dan River, Inc. v. Com. Union Ins. Co.*, 227 Va. 485, 489 (1984) (holding that notice is judged from an objective standpoint and is not excused by the insured's subjective belief that the policy is not implicated); *Hunter v. Hollingsworth*, 165 Va. 583, 590 (1936) ("[W]ith practical unanimity it is held that 'immediate notice' does not mean instantaneous notice but notice given with reasonable dispatch."); *see also State Farm Mut. v. Douglas*, 207 Va. 265, 267 (1966) ("The requirement to give notice of an accident 'as soon as practicable' means that the notice must be given within a reasonable time after the accident. To determine the reasonableness of the delay in giving the required notice, the facts and circumstances in each particular case must be considered."). Although the St. Paul policy uses different phrasing, these Virginia cases are instructive once the policy's own notice trigger has been met. The inquiry remains whether HITT gave notice within a reasonable time after it objectively should have appeared that the claim was likely to exceed the loss notification amount.

The St. Paul policy's follow-form conflict clause does not give HITT a more favorable notice deadline. The policy provided that if any provision of the "Immediate Underlying Insurance" conflicted with a provision in the St. Paul policy, the St. Paul provision would apply unless it "would result in broader coverage," in which event the provision of the immediate underlying insurance would apply. R. 3253. HITT reads St. Paul's notice provision as more

favorable because it does not use the XL policy's "as soon as practicable" language. However, if that difference created a conflict and the St. Paul policy's language would result in broader coverage, the conflict clause would require application of XL policy's more restrictive notice language. Thus, whether analyzed under St. Paul's loss notification provision or through the conflict clause, HITT was required to provide notice within a reasonable time once the claim objectively appeared likely to exceed the loss notification amount.

The circuit court's letter opinion shows that it understood the issue in those terms. The court framed the question as whether "St. Paul [had] notice of a likely insurance claim." R. 1480. It then found that HITT "did not provide St. Paul with reasonable notice" and concluded that "[t]his ruling, alone, mandates judgment in favor of St. Paul." R. 1480. In doing so, the court, citing *Dan River, Inc.*, 227 Va. at 489, recognized that "[f]ailure to give timely notice will not be excused when the insured only subjectively concludes that coverage under the policy will not be implicated." R. 1481.

Thus, the question was whether, from an objective standpoint, it should have reasonably appeared to HITT that the St. Paul policy might be implicated through damages liability exceeding the loss notification amount. *See Dan River, Inc.*, 227 Va. at 489. Here, the circuit court reasonably concluded that HITT's notice obligation under the St. Paul policy arose when Glenstone filed its counterclaim on October 26, 2018. R. 1483-85. In reaching that factual determination, the court relied on the counterclaim's demand of "no less than $35.9 million" in damages and its allegations of serious physical failures in the project. R. 3531. The court described the pleading as a "contractor's horror movie" and a project "falling apart in real time," citing "the shattering of multiple glass panels," "more than 80 roof leaks," "curtain wall leaks," and "interior walls buckling and falling off." R. 1483-84. The court found "as fact" that "the counterclaim, alone, required HITT to notify St. Paul of the likely claim," because HITT already

knew of "an occurrence, damage and likely future damage." R. 1483-84. On this record, the circuit court could reasonably treat the counterclaim as alleging substantial, project-wide physical failures rather than minor or routine construction disagreements. That finding is entitled to deference on appeal because it is not plainly wrong or without evidence to support it.

HITT maintains that the October 2018 counterclaim did not yet establish the type of post-completion, subcontractor-caused property damage on which it later relied to support coverage. However, the policy did not require HITT to know, at the moment notice became due, that it would ultimately prevail on every disputed component of coverage.[6] Rather, viewed objectively, the policy required notice when the information available to HITT showed that an occurrence would "likely result in damages" above the specified amount. R. 3256; *see Dan River, Inc.*, 227 Va. at 489. The circuit court was therefore not required to accept HITT's premise that notice could be delayed until coverage had effectively been proven.

The same point defeats HITT's reliance on the 2020 expert reports. HITT gave notice through Lockton on March 26, 2019, nearly a year before Glenstone provided those reports. R. 3534-36. The circuit court treated that timing as "a concession by HITT that it understood the

---

[6] Even accepting HITT's premise that the products-completed operations provisions were relevant to coverage, the notice condition did not allow HITT to wait until it could prove that Glenstone's claimed damages fell within that *specific* coverage category. The St. Paul policy required notice when an occurrence, event, act, error, or omission would "likely result in damages" above the loss-notification amount. R. 3256. That language required a predictive judgment based on the information then available; it did not require HITT to possess trial-ready proof of post-completion, subcontractor-caused property damage.

Nor would the analysis change because the circuit court did not separately discuss the products-completed operations provisions in resolving notice. HITT relies on those provisions because, in its view, they establish coverage for post-completion property damage arising from subcontractor work. However, the notice issue asks an earlier and different question: when it objectively should have appeared that the claim was likely to implicate St. Paul's excess policy. The October 2018 counterclaim supplied a clear line that the court adopted as its factual finding. The counterclaim sought "no less than $35.9 million" and alleged serious physical failures in the project, including shattered glass panels, extensive roof leaks, curtainwall leaks, and interior walls buckling and falling off. R. 1483-84, 3531. The policy did not permit HITT to wait until expert discovery later clarified the precise coverage theory or damages allocation.

Glenstone claim would likely implicate the St. Paul policy as of March 26, 2019, and not in 2020 when it got Glenstone's witness reports." R. 1483. The later expert reports may have added detail, but they did not alter what the October 2018 counterclaim already objectively conveyed.[7] Even assuming that notice to Lockton counted as notice to St. Paul, the circuit court still could find that notice untimely. As the circuit court observed, HITT's own conduct showed that it recognized by March 2019, at the latest, that the claim was serious enough to notify the broker. R. 1483-85.

The circuit court could properly find HITT's March 26, 2019 notice untimely. It is true, as HITT argues, that the St. Paul policy does not use the words "promptly," "immediately," or "as soon as practicable." However, the policy did not permit HITT to wait indefinitely once the notice trigger was met. Under well-established principles, where a contract does not specify a time for performance, Virginia law implies a reasonable time. *See, e.g.*, *Firebaugh v. Whitehead*, 263 Va. 398, 405 (2002) ("[W]hen a contract does not provide a time within which a party must act, the law will imply a reasonable time in which to do so."); *Jones v. Jones*, 18 Va. App. 52, 55 (1994) ("The rule in Virginia has been long established that 'when a contract is silent as to the time within which an act is to be performed, the law implies a reasonable time.'" (quoting *Grossman v. Saunders*, 237 Va. 113, 120-21 (1989))). Generally, what is "reasonable" is "determined by [the trier of fact], under all the circumstances of the case." *Jones*, 18 Va. App. at 55 (alteration in original) (quoting *Grossman*, 237 Va. at 121).

---

[7] The circuit court was not required to accept HITT's testimony to the extent that it suggests that no likely claim existed until the expert reports arrived. The court expressly found that HITT "needed more objective proof." R. 1484-85. And under the objective standard the court correctly applied, HITT's subjective characterization of the counterclaim as a potential negotiation tactic or as asserting only non-covered claims did not excuse delay. R. 1481. That finding is not plainly wrong.

Here, the chronology supports the circuit court's findings. On October 26, 2018, Glenstone filed its counterclaim seeking "no less than $35.9 million" in damages. R. 3531. HITT did not notify St. Paul that the counterclaim presented a potential excess claim under the St. Paul policy. R. 1479. The federal action then continued, with HITT pursuing its unpaid contract balance and extra-work claims and Glenstone pursuing its counterclaim. On March 19, 2019, HITT and Glenstone participated in mediation, during which Glenstone demanded $11 million plus waiver of HITT's affirmative claims. At that point, HITT still had not notified St. Paul.

Only after that mediation failed did HITT notify Lockton on March 26, 2019—151 days after Glenstone filed the counterclaim. R. 2328-29, 2710. Still, HITT did not provide direct notice to St. Paul until March 9, 2020, after receiving Glenstone's expert reports—almost a year after the Lockton notice and 500 days after Glenstone filed the counterclaim. R. 2532-33, 3535-36. The circuit court found that chronology significant, concluding that HITT "did not notify St. Paul of the likely insurance claim until March 26, 2019, over five months later" and that "HITT attended the failed Glenstone mediation before alerting St. Paul." R. 1482, 1485.

Although cases involving the phrase "as soon as practicable" or prompt-notice language do not control the interpretation of St. Paul's differently worded policy, they support the circuit court's reasonableness analysis. In *Liberty Mutual Insurance Co. v. Safeco Insurance Co.*, 223 Va. 317, 324 (1982), the Supreme Court held that an unjustified 51-day delay constituted a breach of the notice condition where the insured was aware at the scene that personal injuries and property damage had occurred. In *Lord v. State Farm Mutual Automobile Insurance Co.*, 224 Va. 283, 288 (1982), the Court found that a 173-day delay was untimely under a policy requiring notice "as soon as practicable." In *State Farm Mutual Automobile Insurance Co. v. Porter*, 221 Va. 592, 599 (1980), the Court held that a seven-month delay, coupled with the failure to notify

of suit or to forward suit papers, justified denial of coverage. These cases do not establish a specific duration threshold but affirm that an unexplained delay may be unreasonable when the circumstances objectively indicate that the insured should have provided notice sooner.[8] On this record, the circuit court could find that HITT's five-month delay was unreasonable.

The record also supports the circuit court's prejudice finding. "The clear purpose [of a notice provision] is to give the insurer an opportunity to make a timely investigation of all the circumstances and to prepare an adequate defense, if necessary, on behalf of the insured." *N. River Ins. Co. v. Gourdine*, 205 Va. 57, 61-62 (1964). The St. Paul policy gave St. Paul the right "to associate in the defense and control of any claim or suit that is reasonably likely to involve the coverage provided by this agreement" and "to investigate any claim or suit to the extent that we believe is proper." R. 3253. That contractual right mattered most before mediation, when St. Paul could have evaluated the counterclaim, coordinated with the underlying carriers, and participated meaningfully in settlement strategy. The circuit court found that HITT's delay prejudiced St. Paul because St. Paul "had no opportunity to participate" in the March 2019 mediation and "may have provided a more objective evaluation of the Glenstone counterclaim that HITT was minimizing." R. 1485. Constance Melkus testified for St. Paul that, in handling an excess claim, her regular practice was to contact the underlying carriers immediately, confirm that defense counsel and experts were in place, and ensure the claim was

---

[8] Federal caselaw provides persuasive authority and supports our conclusion that the circuit court could reasonably conclude that the five-month delay in this case was unreasonable. *See Va. Farm Bureau Mut. Ins. Co. v. Sutherland*, No. 7:03cv00122, 2004 U.S. Dist. LEXIS 20799, at \*5 (W.D. Va. Oct. 19, 2004) ("Virginia courts have generally held that notice given beyond 75 days, without a reasonable excuse, is untimely."); *Atlas Ins. Co. v. Chapman*, 888 F. Supp. 742, 746 (E.D. Va. 1995) (126-day delay was substantial and material breach of notice provision), *aff'd*, 92 F.3d 1776 (4th Cir. 1996).

being appropriately investigated before a mediation occurred. That evidence supported the court's conclusion that the lost opportunity itself was prejudicial.[9]

The circuit court also permissibly treated it as significant that HITT later settled the same counterclaim it now says was insufficient to trigger notice. HITT characterized the settlement as $51 million, consisting of a $33 million cash payment and its waiver of $18 million in contract-balance and extra-work claims. The settlement agreement itself recited that Glenstone's counterclaim included claims for "Glass" damage, "Building Envelope" damage, and "Doors and Hardware" damage. The court found it telling that Glenstone did not amend its counterclaim before HITT treated the case as serious enough to settle. R. 1484. From this sequence of events, the court could reasonably infer that Glenstone's original counterclaim contained allegations sufficient to make a likely excess claim objectively apparent.

This notice issue is dispositive. The circuit court found that HITT failed to satisfy that condition by waiting more than five months after Glenstone filed a serious, high-value counterclaim, participating in mediation without notifying St. Paul, and by giving notice only after that March 19, 2019 mediation failed. R. 1480, 1485. The record supports that finding.[10]

---

[9] The court was not required to find that St. Paul's participation would certainly have changed the mediation result. It was enough that HITT's delay deprived St. Paul of the opportunity to investigate and to participate meaningfully at that stage.

[10] The circuit court also found, in the alternative, that HITT failed to carry its burden of proving covered damages exceeding St. Paul's $27 million attachment threshold. R. 1485-87. Since the notice ground is independently sufficient to affirm, we do not reach this alternative basis.

CONCLUSION

For these reasons, this Court affirms the circuit court's judgment.

*Affirmed.*